# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In the Matter of the Marriage of:<br>JESSICA LETTY PARRISH (n/k/a JESSICA LETTY PRINCE),<br><br>       Respondent,<br><br>and<br><br>MATTHEW DAVID PARRISH,<br><br>       Appellant. | No. 60354-3-II<br><br><br><br><br><br>UNPUBLISHED OPINION |

CRUSER, C.J.—Matthew Parrish appeals the final divorce order and the order denying his motion for reconsideration entered following his divorce from Jessica Prince, formerly known as Jessica Parrish. Parrish argues that the trial court abused its discretion in allocating the parties' community property by (1) allowing only half of his purported business expenses, (2) failing to impute income to Prince, and (3) awarding Prince her portion of Parrish's 401(k) as part of the equalization payment rather than in a qualified domestic relations order. Parrish also argues that (4) the trial court abused its discretion by awarding Prince attorney fees without making express findings regarding Prince's need and Parrish's ability to pay.

We conclude that the trial court did not abuse its discretion in allocating the parties' community property because (1) it was within the trial court's discretion to halve Parrish's business expenses (2) the trial court is not required to impute income in a dissolution proceeding, and (3) it was within the trial court's discretion to compensate Prince for her share of the 401(k)

through an equalization payment rather than in a qualified domestic relations order. We also conclude that the trial court did not abuse its discretion by ordering Parrish to pay a portion of Prince's attorney fees because (4) the attorney fee award was supported by a finding of need and ability to pay. Accordingly, we affirm.

FACTS

I. BACKGROUND

Matthew Parrish and Jessica Prince were married on August 27, 1994. They separated after 28 years. Their two children were both adults at the time of the property award.

At the time of separation, the parties' community property included a house valued at $476,514; Parrish's 401(k), valued at $74,790; Parrish's sole proprietorship in his business, which had de minimis value because its value is in the income it produces from Parrish's service, and the parties' two vehicles. The parties also had car debt, house debt, and credit card debt. Prince had incurred $5,750 in attorney fees from bringing the dissolution petition.

II. PROPERTY DISTRIBUTION

A. Income Determination

Parrish is self-employed as an IT specialist. Prince was a homemaker for 20 years and currently works at a senior living facility. The trial court determined, based on Prince's financial affidavit and paystubs, that Prince earns $3,765 in net monthly income and spends $3,211 a month, not including credit card debt, leaving her $554 at the end of each month. After considering Parrish's tax returns and financial declaration, the trial court found that Parrish's net monthly income was $6,592 and that Parrish spends $5,077 a month, leaving him with $1,515 left each month. The trial court set Parrish's income higher than his proposed income "based upon looking

2

at the gross receipts on the tax returns minus the cost of goods sold." Verbatim Rep. or Proc. (VRP) at 175. In calculating Parrish's income, the trial court disallowed Parrish's home office expenses and allowed half of Parrish's expenses for his vehicle, computer/internet, and telephone that he listed on his tax documents. The trial court reasoned "it is common to be using those expenses for business, and that's okay. And it's also common to sometimes just expense all of it, even though we know we're kind of living this life of both personal and nonpersonal." *Id.* at 177. The trial court further explained

> There was some evidence in the tax returns regarding the car /truck expense, which I think was related to a per diem of what you're allowed to deduct. And there was inconsistency year-over-year about what was kind of -- what the total miles were and how many of those miles were deducted. So to neutralize that, I just kind of cut them in half.

*Id.* With regard to the other expenses, the trial court noted that "[a] few expenses in 2023 were quite a bit higher than the prior years, and so . . . I looked at it and made a decision about what seemed to be reasonable and allowable." *Id.*

The trial court found that both Prince and Parrish would likely work until normal retirement age, 67. Because the parties submitted no evidence regarding future earning potential, the trial court concluded that the parties would continue to earn at roughly the same rate until retirement.

B. Determination Regarding Spousal Support

Prince requested spousal support. The trial court found that Prince had need for $500 per month in spousal support for the period from July 2024 through Parrish's retirement in June 2037 and that Parrish had the ability to pay this amount. The total amount of spousal support due under this plan, if ordered, would be $78,000. The trial court found that the present value of future spousal support was $40,000. Instead of ordering Parrish to pay spousal support, the trial court

awarded Prince a disproportionate property award from the sale of the house. The trial court reasoned that both parties would benefit from this arrangement because

> [t]his way, [Prince] receives money once the house sells that she can spend, save, or invest now. [Parrish] benefits by being able to retain his future income. [Parrish] needs extra cash flow from now until the house sells to make payments against debts awarded to him. [Prince] will have additional cash flow in the form of rent until the house sells, to use to pay her extra bills.

Clerk's Papers (CP) at 16. Parrish had already provided Prince with financial support of $3,750 each month from October 2022 to March 2024. Parrish also provided Prince with $750 of financial support per month from April 2024 to June 2024.

C. Real Property Award

The trial court ordered the parties to sell their family home. Parrish would be responsible for repairing the water heater and any other necessary repairs or maintenance needed for the sale. Parrish would be reimbursed at the time of sale. The parties' other marital debts were to be paid from the gross proceeds of sale. The remaining proceeds would be divided between Parrish and Prince. Prince would receive her share of Parrish's 401(k), reimbursement for half of her attorney fees, and the $40,000 in lieu of spousal support from Parrish's 50% share of the house sale proceeds.

D. Motion for Reconsideration

Parrish moved the court to reconsider the trial court's orders regarding property distribution. Parrish contended that (1) the trial court's distribution of Parrish's 401(k) was inequitable because it failed to consider the fact that at the time of withdrawal the funds will be subject to income tax, (2) the trial court erred by ordering Parrish to pay half of Prince's attorney fees because Prince has not demonstrated need, (3) the disproportionate property distribution was

inequitable because the trial court did not impute income to Prince although Prince underrepresented her full earning capacity, and (4) the trial court overestimated Parrish's income because it rejected Parrish's estimate of his business expenses. The trial court denied the motion. Parrish appeals.

## DISCUSSION

### I. STANDARD OF REVIEW

At issue before us are several aspects of a trial court's decision in a marriage dissolution action. With regard to review of dissolution proceedings, the supreme court has observed that "[t]he emotional and financial interests affected by such decisions are best served by finality." *In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). Accordingly, the party challenging the trial court's decisions in a dissolution proceeding bears "the heavy burden" of demonstrating an abuse of discretion. *Id.*

The trial court has abused its discretion where its decision is manifestly unreasonable or is based on untenable grounds or reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005).

> A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.

*In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

Where, as here, the trial court has weighed the evidence, our role on review is to determine whether substantial evidence supports the findings of fact, and in turn, whether the findings support the trial court's conclusions of law. *In re Marriage of Rockwell*, 141 Wn. App. 235, 242, 170 P.3d

572 (2007). " 'Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise.' " *Id.* (internal quotation marks omitted) (quoting *In re Marriage of Griswold*, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002)). We do " 'not substitute [our] judgment for the trial court's, weigh the evidence, or adjudge witness credibility.' " *Id.* (alteration in original) (internal quotation marks omitted) (quoting *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999)). If a trial court's decision is based on unsupported findings, or if the findings do not satisfy the applicable legal standard, the trial court's decision amounts to an abuse of discretion, warranting reversal. *Muhammad*, 153 Wn.2d at 803; *Littlefield*, 133 Wn.2d at 47.

## II. PROPERTY DISTRIBUTION

A. Legal Principles

In a marriage dissolution proceeding, a trial court is tasked with disposing the parties' property and liabilities, " 'either community or separate, as shall appear just and equitable after considering all relevant factors.' " *Muhammad*, 153 Wn.2d at 803 (quoting RCW 26.09.080). The trial court must consider a list of nonexclusive factors set forth in RCW 26.09.080, including "(1) [t]he nature and extent of the community property; (2) [t]he nature and extent of the separate property; (3) [t]he duration of the marriage . . . ; and (4) [t]he economic circumstances of each spouse . . . at the time the division of property is to become effective." RCW 26.09.080; *In re Marriage of Zahm*, 138 Wn.2d 213, 219, 978 P.2d 498 (1999).

Trial courts are vested with "broad discretion" to determine a just and equitable allocation of property based on the particular circumstances in a case. *Rockwell*, 141 Wn. App. at 242. Mathematical precision is not required in a just and equitable distribution; instead, a trial court

must ensure " 'fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties.' " *Zahm*, 138 Wn.2d at 219 (quoting *In re Marriage of Crosetto*, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).

B. Partial Allowance of Business Expense Deductions

First, Parrish argues that the trial court abused its discretion by disallowing half of Parrish's proposed business expenses. Parrish contends that there was no basis for the trial court to deviate from the values represented in Parrish's IRS tax filings because Parrish's "filed tax returns, submitted into evidence without objection, carried a presumption of compliance" with IRS regulations. Br. of Appellant at 7. Parrish cites no authority in support of this proposition. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). Parrish does not allege that the property award was inequitable even assuming the trial court overestimated his income. Accordingly, no abuse of discretion occurred.

C. Failure to Impute Income to Prince

Parrish contends that the trial court abused its discretion by failing to impute income to Prince on the basis that she is voluntarily underemployed. Parrish argues that RCW 26.19.071(6) requires the court to impute income under these circumstances. But RCW 26.19.071(6) concerns a parent's child support obligation. RCW 26.19.071(6) generally requires the court to impute income to a parent who is voluntarily underemployed, except "[a] court shall not impute income to a parent who is gainfully employed on a full-time basis, unless the court finds . . . that the parent is purposefully underemployed to reduce the parent's child support obligation." RCW 26.19.07(6)

is plainly inapplicable to property distribution in a dissolution and places no obligation on the trial court to impute income for purposes of determining an equitable distribution. Accordingly, we conclude that the trial court did not abuse its discretion by failing to impute income to Prince.[1]

D. 401(k) Distribution

Parrish contends that the trial court abused its discretion because it did not "employ a [qualified domestic relations order (QDRO)] nor account for tax liability" when it distributed Parrish's 401(k). Br. of Appellant at 8. Parrish argues that he and Prince did not receive equal shares of the value of his 401(k) because Prince did not have to pay taxes on her portion. We conclude that the trial court did not abuse its discretion by ordering Parrish to compensate Prince for her share of the value of the 401(k) through an equalization payment rather than a QDRO.

Parrish did not request that the trial court distribute his 401(k) using a QDRO and presented no evidence that would have invited the court to consider the tax consequences of the trial court's distribution. And Parrish identifies no authority supporting the proposition that the trial court was required to distribute the 401(k) through a QDRO rather than as an equalization payment. Moreover, mathematical precision is not required in a just and equitable distribution. *Zahm*, 138 Wn.2d at 219. The trial court determined that an equalization payment representing Prince's share of the value of the 401k promoted the interests of finality. This was well within the trial court's discretion.

---

[1] Moreover, the trial court's determination of a spouse's income for purposes of property distribution is a finding of fact we review for substantial evidence. *See Rockwell*, 141 Wn. App. at 242. Here, Prince's pay stubs and financial declaration support the trial court's finding regarding Prince's income. Parrish does not contend that the trial court undervalued Prince's actual income nor does he allege that the property distribution in the divorce order was inequitable because the trial court undervalued Prince's income.

III. ATTORNEY FEE AWARD

Parrish argues that the trial court abused its discretion by ordering him to pay half of Prince's attorney fees without making findings regarding Prince's financial need or Parrish's ability to pay. We disagree and conclude that the trial court did not abuse its discretion because the trial court's oral ruling indicates that the trial court found that Prince has need and that Parrish is able to pay the fee award.

A. Legal Principles

Need, ability to pay, and equity are the primary considerations for the award of attorney fees in a dissolution action. *In re Marriage of Van Camp*, 82 Wn. App. 339, 342, 918 P.2d 509 (1996). Under RCW 26.09.140, a court may order attorney fees in a dissolution proceeding. This statute provides that a court may order one party to pay reasonable attorney fees, costs, or other professional fees related to the dissolution litigation to the other party "after considering the financial resources of both parties."

The decision to award fees pursuant to RCW 26.09.140 is discretionary. *In re Marriage of Urbana*, 147 Wn. App. 1, 16, 195 P.3d 959 (2008). In determining whether to award fees, the court must " 'balance[ ] the needs of the spouse seeking fees against the ability of the other spouse to pay.' " *Id.* (quoting *In re Marriage of Moody*, 137 Wn.2d 979, 994, 976 P.2d 1240 (1999)). "A lack of findings as to either need or ability to pay requires reversal." *In re Marriage of Scanlon*, 109 Wn. App. 167, 181, 34 P.3d 877 (2001).

In the absence of formal findings of fact, "this court may look to the trial court's oral opinion for informal findings." *In re Marriage of Steadman*, 63 Wn. App. 523, 529, 821 P.2d 59 (1991).

9

B. Analysis

Parrish argues that the trial court abused its discretion by ordering him to pay half of Prince's attorney fees because the trial court did not make a written finding of fact specifically addressing Prince's need and his ability to pay the attorney fee award. Parrish is correct that the trial court did not make a written finding regarding Prince's need and Parrish's ability to pay the attorney fee award. However, the trial court did explicitly find "[a]s for spousal support from July 1, 2024, through June 30, 2037, the year [Parrish] turns 67, the Court determines [Prince] has a need for $500 per month and [Parrish] has an ability to pay $500 per month." CP at 17.

And, in its oral ruling, the trial court repeatedly emphasized the income disparity between Parrish and Prince. The trial court explained that it imposed the disproportionate property award "based on some thinking around what [Prince's] need is. There's clearly need and an ability to pay and a long-term marriage." VRP at 183. The trial court continued, "a disproportionate property settlement award is intended to help, kind of, equalize things. And I could see from the trial that you certainly have the need." *Id.* And the trial court reviewed the parties' financial declarations, bank statements, pay stubs, and tax forms and determined that Parrish's income was significantly higher than Prince's.

Parrish contends that findings concerning income disparity cannot support an award of need-based attorney fees where "the record lacks findings on Respondent's financial condition or appellant's remaining resources post-judgment." Br. of Appellant at 11. But "[a] spouse's receipt of substantial property or maintenance does not preclude the spouse from also receiving an award of attorney fees and costs when the other spouse remains in a much better position to pay." *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). Here, the record reflects that

Parrish would remain in a much better position to pay the attorney fees given the income disparity between the parties. Therefore, the trial court did not abuse its discretion by ordering Parrish to pay half of Prince's attorney fees.

## CONCLUSION

We conclude that the trial court did not abuse its discretion in allocating the parties' community property because (1) it was within the trial court's discretion to halve Parrish's business expenses (2) the trial court is not required to impute income in a dissolution proceeding, and (3) it was within the trial court's discretion to compensate Prince for her share of the 401(k) through an equalization payment rather than in a QDRO. We also conclude that the trial court did not abuse its discretion by ordering Parrish to pay a portion of Prince's attorney fees because (4) the attorney fee award was supported by a finding of need and ability to pay. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

LEE, J.

CHE, J.